### The PEOPLE of the State of Colorado, Complainant

v.

### David AUER, Respondent.

### No. 14PDJ006.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 18, 2014.

---

142. *See* C.R.C.P. 251.7(a)(1)-(3).

---

**OPINION AND DECISION IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(c)**

### I. *SUMMARY*

In this case, Respondent, who is not a licensed attorney in the State of Colorado, intentionally practiced law in this state for more than three years without the supervision of a licensed lawyer. He also engaged in dishonest conduct by intentionally holding himself out as a licensed Colorado attorney to his clients. The Court finds that the appropriate sanction is disbarment.

### II. *PROCEDURAL HISTORY*

The People filed their complaint on January 7, 2014. A copy of the complaint and citation were served upon Respondent by certified and regular mail at his last known address: 4906 W. 114th Place, Tulsa, Oklahoma 74137. Respondent failed to answer the complaint. On February 25, 2014, the People filed a motion for entry of default against Respondent, who did not file a response. The Court granted the People's motion for default on March 24, 2014.

Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established

by clear and convincing evidence.[1] During the sanctions hearing on June 5, 2014, the Court considered the People's exhibit 1 and heard testimony from Loni Woodley.

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

Respondent was admitted to the bar of the Oklahoma Supreme Court on September 1, 1991, under attorney registration number 14672. At all relevant times, however, Respondent practiced law in Colorado. He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[2] Because Respondent has defaulted, the admitted facts and rule violations are presented in abbreviated form. Further details are available in the People's complaint.

### Facts Established By Default

On December 23, 2009, Respondent, a licensed certified public accountant in Colorado and Oklahoma, entered into a partnership with Loni Woodley, an accountant, after purchasing two Colorado Springs accountancy firms. The partnership was formed with the intent to practice accounting in Colorado. The new partnership became known as Auer Woodley CPAs ("AW"). Respondent mentioned to Woodley that he could apply for a Colorado law license, with the intent to practice estate and business planning in Colorado under the supervision of a Colorado attorney while he sought Colorado bar membership.

In early 2010, Respondent contacted Terry Doherty, an attorney in Colorado Springs. Respondent informed Doherty that he was applying for a law license in Colorado and was seeking to partner with a licensed Colorado attorney who would supervise his work while he was waiting for his license. Respondent then negotiated with Doherty to form a law firm. At the time, Respondent had yet to submit an application for admission to the Colorado bar.

On September 8, 2010, Respondent filed papers with the Colorado Secretary of State's Office, registering Auer Doherty as a limited liability law partnership. Respondent began practicing law from AW's Colorado office while using the Auer Doherty name. He provided Colorado clients with advice concerning estate planning matters, and he drafted estate planning documents, including wills, revocable and irrevocable trust documents, and insurance trusts.

In November 2010, Doherty became concerned that Respondent was not pursuing a Colorado law license. After discussing these concerns with Respondent, Doherty wrote Respondent a memorandum in which he alleged that Respondent was engaged in the unauthorized practice of law by rendering estate planning advice and creating documents for clients. He also questioned Respondent's solicitation of clients. Doherty had never reviewed or supervised Respondent's work. When Respondent did not address the issues Doherty raised in the memorandum, Doherty withdrew from the firm.

In January 2011, Respondent applied for admission to the Colorado bar. But the application was abandoned after he failed to provide additional information.

After the breakup of Auer Doherty, Respondent conferred with three other Colorado Springs lawyers—Stephen Benson, David Willson, and Ryan Coward—about partnering in a new law firm. During July and August of 2011, the three of them met and Respondent discussed with them a large untapped market for high-end estate planning work in the Colorado Springs area. He stated that AW would be the source for client referrals. Thereafter, Respondent paid so that he and Benson could attend a continuing legal education course by Wealth Counsel LLC, an estate planning industry group that markets estate planning software. At the time, Benson had very little trust and estate experience, and he had never handled estate planning matters involving large estates.

---

1. *See* C.R.C.P. 251.15(b); *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

2. *See* Colo. RPC 8.5(a) ("A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction.").

On September 8, 2011, Respondent provided Benson with estate planning documents that Respondent had drafted back in February and March 2011 for Colorado clients. Respondent asked Benson to review them so that Benson could get a better understanding of the kind of estate planning work their law firm would be performing. Respondent advised Benson not to review the documents too thoroughly and paid him $500.00 for his review. On September 15, 2011, Respondent filed articles of organization with the Colorado Secretary of State for Primus Law Group of Colorado, LLC, listing the AW address as the principal office address and AW as the registered agent.

Respondent asked Benson to come to the AW office on October 6, 2011, where he was taken into a conference room with Woodley and Carol Pisanos, an AW client experience manager. Respondent explained to the attendees that he had engaged in the unauthorized practice of law by drafting estate planning documents. Respondent asked Benson whether he thought Respondent was able to draft these types of documents without violating Colorado law. Benson replied that he did not believe Respondent could legally draft these documents. Respondent then suggested that Benson supervised his work, but Benson denied this, as he had received the estate documents six months after Respondent had performed the work. Respondent thereafter announced that he would not draft any more documents and would form a Colorado law firm to handle such matters in the future.

In November 2011, AW formed a new accounting firm, Auer Woodley & Reinemer, P.C. ("AWR"), based in Englewood, Colorado. Ownership of the new entity was held by AW and Eric Reinemer, CPA.

Toward the end of 2011, Benson, Willson, and Coward grew concerned about the status of Respondent's Colorado law license and the relationship their proposed law firm would have with AW. In early 2012, the three men broke off negotiations with Respondent regarding the formation of the law firm.

In April 2012, Respondent approached another Colorado attorney, Francis Brown, regarding the formation of an estate planning law firm in Colorado. Respondent told Brown that he needed an attorney who was licensed in Colorado to review his work and asked Brown to assume the supervisory role. Brown understood that Respondent would bring him clients and that Brown would be responsible for the final estate planning documents. Respondent registered Auer Brown LLP on May 19, 2012, and listed AWR's principal office.

Respondent then contacted another Colorado lawyer, Amy Symons, in June 2012, regarding a possible affiliation with her firm. Respondent informed Brown that he was recruiting Symons for Auer Brown. Respondent told Symons that he wanted her to act as co-counsel on several client matters and to supervise his work. During the summer of 2012, Symons and Respondent met with clients—a married couple and a single mother—regarding estate planning issues. During the meeting with the married couple, it became apparent to Symons that Respondent had a longstanding relationship with them, as he advised them on estate planning matters and did most of the talking. Respondent never informed either client that he was not licensed to practice law in Colorado. Respondent used estate planning software to generate estate planning documents for these clients, and Symons reviewed them.

After giving the clients the estate documents, Symons reviewed the engagement letter for the first time. She noted that the letter listed her name on the Auer Brown letterhead but did not indicate that Respondent was unlicensed in Colorado. She became concerned that Respondent was misleading clients and ended her affiliation with him. Symons later learned that the single-mother client believed Respondent was licensed to practice law in Colorado.

From June 2012 through May 2013, Respondent billed Auer Brown clients in Colorado, Kansas, and Wyoming for legal services, including the drafting of wills, living wills, trust documents, powers of attorney, partnership agreements, and operating agreements. Brown worked on two client matters for Auer Brown with Respondent. He was never informed of additional clients,

although he understood that Respondent was also working in Wyoming. Brown later learned that Respondent was engaging in the practice of law under the Auer Brown name in Wyoming.

Beginning in 2010, Respondent also billed for his legal services through AW. Specifically, Respondent charged clients for the preparation of estate planning documents. Respondent advertised his legal services on his profile affiliation with Auer Brown, which stated that he was licensed to practice law both in Colorado and Oklahoma.

In late 2012 or early 2013, Respondent joined the Trilogy Law Group, where he advertised as a Colorado lawyer. In January 2013, Respondent again submitted an application for admission to the Colorado bar.

On January 24, 2013, Woodley, through counsel, notified Respondent that he was being expelled from AW. Woodley asserted that Respondent's unauthorized practice of law constituted a "cause event" for expulsion under the AW partnership agreement. On April 5, 2013, Respondent received a cease-and-desist letter from the Wyoming Unauthorized Practice of Law Committee. The letter reprimanded Respondent for giving legal advice and holding himself out as a lawyer licensed to practice in Wyoming.

On September 9, 2013, Respondent and Woodley attended a four-day arbitration hearing concerning the legality of Respondent's expulsion from AW. At the hearing, Benson, Brown, Doherty, and a client testified that Respondent had engaged in the unauthorized practice of law. The arbiter found "overwhelming evidence" that Respondent had engaged in the unauthorized practice of law in Colorado. Among this evidence was the client's testimony that he had hired Respondent to draft a will and other estate planning documents. The client testified that Respondent had represented himself as a Colorado lawyer and that he believed Respondent's representations.

Through the conduct described above, Respondent violated Colo. RPC 5.5(a)(1), which proscribes a lawyer from practicing law in this jurisdiction without a license to practice law. He repeatedly violated this rule by holding himself out as a licensed Colorado attorney, establishing multiple offices for his law practice, drafting legal documents, and offering legal advice to or on behalf of clients. He also violated Colo. RPC 5.5(a)(2), which prohibits attorneys from practicing law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction, when he engaged in the unauthorized practice of law in Wyoming. In addition, by misrepresenting to clients his status to practice law in Colorado, Respondent engaged in dishonest conduct in violation of Colo. RPC 8.4(c).

## IV. SANCTIONS

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[3] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By practicing law in Colorado without a Colorado license, Respondent violated duties he owed as a professional and to the legal profession. He also violated duties owed to clients, the public, and the legal system by engaging in dishonest conduct.

*Mental State:* The Court's order entering default establishes that Respondent knowingly engaged in the unauthorized practice of law in Colorado and Wyoming and that he engaged in dishonest conduct by misrepresenting his status as a lawyer to clients. The Court finds that Respondent acted not only knowingly but intentionally in committing this misconduct. Whereas knowledge is the conscious awareness of the nature of the conduct but without the conscious objective

---

3. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

or purpose to accomplish a particular result, intent is defined as the conscious objective or purpose to accomplish a particular result.[4]

Respondent's conduct was intentional because he received notice from Doherty in November 2010 of his unauthorized practice of law, as well as the 2013 cease-and-desist letter from the Wyoming Unauthorized Practice of Law Committee, reprimanding him for giving legal advice and holding himself out as a Wyoming lawyer. Yet Respondent continued to engage in the unauthorized practice of law for more than three years after receiving Doherty's memorandum, and he billed both Wyoming and Colorado clients for his services after receiving the cease and desist letter. Respondent further facilitated his misconduct by engaging in dishonesty. His dishonesty was intentional because it was done with the conscious objective to avoid complying with his obligations under the rules. Respondent continued to seek out avenues to engage in the unauthorized practice of law, including attempts to form multiple partnerships with Colorado lawyers, even though he knew he could not lawfully perform the estate planning work under the Colorado Rules of Professional Conduct.

*Injury:* Respondent caused actual injury to the legal system and to the profession by engaging in the unauthorized practice of law. He also caused potentially serious harm to his clients when he performed legal services and billed for his work without a license to practice law in Colorado. Woodley stated that he believed that Respondent created trust documents for many clients who either did not understand the documents or did not need the type of documents Respondent created for them; they were nonetheless billed by Respondent for those services. In fact, Woodley learned through arbitration with Respondent that he had billed in excess of $300,000.00 to AW clients.

Respondent also caused serious potential and actual injury to the accountants and various attorneys with whom he partnered. For example, Woodley testified that he has incurred significant costs in hiring Colorado attorneys to review the estate planning documents that Respondent prepared for AW's clients. Woodley's accounting firm has also paid restitution to many clients. Woodley had to pay for the arbitration costs out of his own pocket, which totaled approximately $265,000.00. He was awarded these costs in the arbitration but has been unable to collect on the judgment. Woodley further testified that Respondent's conduct caused him emotional stress. In addition, through his conduct Respondent exposed Colorado attorneys to potential liability for assisting him to engage in the unauthorized practice of law.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Under the ABA *Standards*, the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 7.1 provides that disbarment is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to gain a benefit and causes serious or potentially serious injury to a client, the public, or the legal system. Similarly, ABA *Standard* 4.61 urges disbarment be imposed where an attorney knowingly deceives a client with the intent to benefit the lawyer and causes serious or potentially serious injury to a client. Finally, ABA *Standard* 5.11(b) calls for disbarment when an attorney engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may warrant an increase in the presumptive discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[5] The Court considers evidence of the following aggravating circumstances in deciding the appropriate sanction. Respondent failed to participate in this disciplinary proceeding, and thus the Court is unaware of any mitigating factors.

---

4.  ABA *Standards* § IV, Definitions.

5.  *See* ABA *Standards* 9.21 & 9.31.

*Dishonest or Selfish Motive—9.22(b):* The Court finds that Respondent acted with a selfish motive when, in order to collect fees from clients, he knowingly practiced law in Colorado and Wyoming without a license.

*Pattern of Misconduct—9.22(c):* Respondent engaged in an extensive pattern of the unauthorized practice of law and dishonest conduct for approximately three years.

*Multiple Offenses—9.22(d):* Respondent committed three separate types of offenses, including practicing law in Colorado and Wyoming without a law license and engaging in dishonest conduct.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent has been a licensed attorney in Oklahoma since 1991.

### Analysis Under ABA *Standards* and Colorado Case Law

█ The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[6] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[7] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

█ In this case, ABA *Standards* 4.61, 5.11(b), and 7.1 all call for disbarment. Further, the ABA *Standards* counsel that in cases involving multiple types of attorney misconduct, the ultimate sanction should at least be consistent with, if not greater than, the sanction for the most serious disciplinary violation.[8]

Although not directly on point, Colorado Supreme Court case law suggests that disbarment is appropriate here. For example, in *People v. James*, the Colorado Supreme Court found that a lawyer's continued practice of law while under an order of suspension, coupled with his failure to protect the legal interests of his client, warranted disbarment.[9] Also, in *People v. Wilson*, the Colorado Supreme Court disbarred an attorney who practiced law after he had been immediately suspended due to a felony conviction.[10] Likewise, courts in sister jurisdictions have imposed lengthy suspensions or disbarments when attorneys practice without a license in the state in which they are conducting business.[11]

The Court finds that the ABA *Standards* and Colorado case law support the imposition of disbarment in this matter.[12] Further, Respondent's non-appearance at the sanctions hearing demonstrates that he is indifferent to and has no regard for these disciplinary proceedings. Accordingly, the Court accepts the People's recommendation of disbarment.

6. See *In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

7. *In re Attorney F.*, 285 P.3d at 327 (quoting *People v. Rosen*, 198 P.3d 116, 121 (Colo.2008)).

8. ABA *Standards* § 2 at 7.

9. 731 P.2d 698, 700 (Colo.1987).

10. 832 P.2d 943, 943 (Colo.1992).

11. See *In re Nadel*, 82 A.3d 716, 723 (Del. Supr.2013) (suspending a non-admitted attorney for one year and prohibiting him from seeking pro hac vice admission for three years, for knowingly engaging in the unauthorized practice of law in Louisiana); *In re Kingsley*, No. 138,2008, 2008 WL 2310289 at *4 (Del.Supr. Jun. 4, 2008)

(disbarring an unlicensed attorney for knowingly violating a cease and desist order); *In re Cortigene*, —— So.3d ——, Nos.2013–B–2022, 2013–B–2172, 2014 WL 683717 at *6 (La. Feb. 14, 2014) (suspending for three years an attorney who was licensed in Texas and Pennsylvania for knowingly engaging in the unauthorized practice of law in Louisiana).

12. See also *People v. Swan*, 938 P.2d 1164, 1166 (Colo.1997) (approving the disbarment of an attorney who took no steps to notify his client of his suspension or to protect his client's interests, which caused actual harm to his client); *People v. Redman*, 902 P.2d 839, 840 (Colo.1995) (upholding disbarment where the attorney knowingly engaged in the practice of law while administratively suspended); *People v. Dolan*, 873 P.2d 766, 769 (Colo.1994) (upholding disbarment where the attorney, who had an extensive history of similar discipline, failed to perform the affirmative duties of notification and winding up imposed by the disciplinary rules).

## V. *CONCLUSION*

Respondent practiced law without a Colorado license for more than three years, engaged in dishonest conduct, and failed to cooperate in these disciplinary proceedings. Attorneys occupy a position of trust and responsibility and are expected to adhere to high moral and ethical standards. Respondent disregarded these standards and caused serious injury and serious potential injury to his clients, Colorado attorneys, and the legal profession. In light of the egregious nature of Respondent's repeated misconduct and the aggravating factors at work here, the Court finds disbarment is warranted.

## VI. *ORDER*

The Court therefore ORDERS:

1. **DAVID AUER,** Oklahoma attorney registration number 14672, is **DISBARRED** from the practice of law **IN THE STATE OF COLORADO.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [13]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **SHALL** file any post-hearing motions or applications for stay pending appeal with the Court on or before **Wednesday, July 9, 2014.** No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" on or before **Wednesday, July 2, 2014.** Respondent may file his response to the People's statement, if any, within seven days thereafter.

---

**13.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.